UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BLOSSOM SOUTH, LLC

                                   Plaintiff,

                                                                              DECISION AND ORDER

                                                                               13-CV-6452L

                                   v.

KATHLEEN SEBELIUS,
as Secretary of the United States Department
of Health and Human Services,
MARILYN TAVENNER,
as Administrator of the Centers for Medicare and
Medicaid Services,
NIRAV SHAH, M.D.,
as Commissioner of Health of the
State of New York,

                                   Defendants.
_____

       Plaintiff Blossom South, LLC ("Blossom South") commenced this action against Kathleen Sebelius, as Secretary of the United States Department of Health and Human Services ("Secretary"), Marilyn Tavenner, as Administrator of the Centers for Medicare & Medicaid Services ("CMS"), and Nirav Shah, M.D., as Commissioner of Health of the State of New York. Plaintiff asserts claims under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the Medicare Act, 42 U.S.C. § 1395 *et seq.*, and other statutes, seeking to enjoin defendants from terminating Blossom South's Medicare and Medicaid provider agreement without a pretermination hearing and other administrative review procedures.

       On August 13, 2013, this Court issued a Decision and Order, 2013 WL 4679275, familiarity with which is assumed, granting plaintiff's motion for a preliminary injunction and enjoining defendants from terminating plaintiff's provider agreement or taking steps toward that end, pending

further order of this Court. On November 4, 2013, the Court heard oral argument on defendants' motions to dismiss the complaint (Dkt. #23, #24). The following constitutes the Court's decision on those motions.[1]

**INTRODUCTION**

According to the complaint, the factual allegations of which are accepted as true, Blossom South is a limited liability company that operates a skilled nursing facility on Monroe Avenue in Rochester, New York. Blossom South participates in Medicare, which is a federally funded and administered health insurance program for the eligible elderly and disabled established by title XVIII of the Social Security Act. Under Medicare Part A, qualified providers of health services can receive reimbursement from the government for their provision of health services to Medicare-qualified patients. *See Palomar Medical Center v. Sebelius*, 693 F.3d 1151, 1155 (9th Cir. 2012).[2]

To qualify for payments under the program, a facility must meet certain requirements under federal law. *See Golden Living Center-Frankfort v. Secretary Of Health And Human Services*, 656 F.3d 421, 424 (6th Cir. 2011). Compliance with those requirements is typically assessed by state agencies acting under contract with the federal government. *Id.* at 425.

Instances of noncompliance, or "deficiencies," are ranked according to their severity, ranging from "[n]o actual harm with a potential for minimum harm," to "immediate jeopardy to resident

---

[1] Defendant Shah's motion largely adopts the arguments made in the federal defendants' motion. *See* Dkt. #23-2 at 6-7. Since the Court bases its decision on the grounds asserted by the federal defendants, I find it unnecessary to separately address defendant Shah's motion.

[2] Medicaid is a health care program jointly funded by federal and state sources that provides health insurance and nursing home coverage to low-income individuals. *See United States v. McGovern*, 329 F.3d 247, 248 (1st Cir. 2003). Both "[t]he Medicare and Medicaid Acts impose common certification and quality of care requirements on nursing facilities," however, so for the sake of convenience the Court will generally refer only to Medicare in this Decision and Order. *Beechwood Restorative Care Center v. Thompson*, 494 F.Supp.2d 181, 195 n.9 (W.D.N.Y. 2007) (quoting *Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354, 366 (6th Cir. 2000)).

health or safety." 42 C.F.R. § 488.404(b). Deficiencies are given letter ratings, which increase in severity from A through L.

Depending on the severity of the deficiencies, the Secretary may impose various penalties and remedies. 42 C.F.R. § 488.408. If the deficiencies are severe enough, the facility may be terminated from the Medicare program. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 6-7 (2000); *Fox Ins. Co., Inc. v. C.M.S.*, 715 F.3d 1211, 1214-15 (9th Cir. 2013); *Ridgeview Manor of Midlands, L.P. v. Leavitt*, No. 07 CV 861, 2007 WL 1068224, at *2 (D.S.C. Mar. 30, 2007).

The New York State Department of Health ("DOH") is the state agency responsible for surveying skilled nursing facilities in New York that participate in Medicare. In March 2011, DOH designated Blossom South as a "special focus facility" ("SFF"), indicating that Blossom South had a track record of substandard quality of care. SFFs are subject to closer scrutiny than non-SFFs, and in particular, more frequent surveys. *See THI of Kansas at Highland Park, LLC v. Sebelius*, No. 13-2360, 2013 WL 4047570, at *3 (D.Kan. Aug. 9, 2013). If problems persist at the facility and are not corrected, the facility's participation in the Medicare and Medicaid programs may be terminated. *Id.* If the problems are sufficiently addressed and abated, the facility may "graduate" from the program, *i.e.*, its SFF designation will be removed.

DOH's May 31, 2011 letter to Blossom South stated that its placement on SFF status was based on the prior three years of survey results. Dkt. #24-4 at 27. Apparently this included some seventy-one citations between December 2009 and March 2011. Def. Ex. 6. Four of those citations included "immediate jeopardy" findings involving actual harm to residents. *Id.*[3]

---

[3]Blossom South had also been placed once before on SFF status, in 2005, and "graduated" in 2007. Def. Ex. 6.

DOH also stated that as a result of the SFF designation, DOH would conduct two standard surveys at Blossom South each year, as well as periodic onsite monitoring visits. The letter advised Blossom South that it would be "expected to achieve significant improvement in compliance with federal and state regulations during the next 24 months," and that "[a]fter 24 months and four standard surveys following designation, failure to achieve significant progress will result in notice of termination from the Medicare and Medicaid Programs." *Id.*[4]

Over the ensuing twenty-seven months, Blossom South received eighty-six citations.[5] Def. Ex. 6. Plaintiff contends that a close examination of the record shows a pronounced trend toward significant improvement, with a particular drop in the number of more serious deficiencies. Nevertheless, on August 14, 2013, DOH issued a statement identifying eighteen deficiencies, of various levels of severity, and advising plaintiff that DOH was recommending to CMS that Blossom South's Medicare provider agreement be terminated. CMS issued a notice of termination on August 15, 2013, stating that Blossom South's provider agreement would be terminated on September 14, 2013, and directing Blossom South to submit a closure plan within seven days.[6]

---

[4] Both sides here have submitted copies of correspondence and other documents relating to these events. Since the complaint refers to those documents, the authenticity of which is not disputed, and is based on the events that they memorialize, the Court may consider them on a motion to dismiss. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Rivera v. Lempke*, 810 F.Supp.2d 572, 575 n.2 (W.D.N.Y. 2011); *Nieves v. County of Monroe*, 761 F.Supp.2d 48, 51 (W.D.N.Y. 2011). *See also Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) ("some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment," including "'documents the authenticity of which are not disputed by the parties; ... official public records; ... documents central to plaintiffs' claim; [and] ... documents sufficiently referred to in the complaint'" (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

[5] The discrepancy between this 27-month period and the 24-month period referred to in DOH's initial letter to Blossom South appears to be attributable to some discussions between the parties toward the end of the 24-month period and to ordinary procedural delays. In any event, that discrepancy has no bearing on the merits of this case.

[6] While the parties differ in their characterization of the severity of the problems at Blossom South, plaintiff's claims in this case do not rest on the correctness of the deficiency
(continued...)

On August 20, Blossom South requested an expedited hearing before an administrative law judge ("ALJ") of the Department of Health and Human Services Departmental Appeals Board. According to plaintiff, such a hearing would generally not take place before Blossom South's Medicare provider agreement was terminated.

Blossom South received a letter from CMS on August 27, stating that Blossom South would not be given an opportunity to correct the deficiencies identified in DOH's August 8 survey, that Blossom South would not be allowed to pursue informal dispute resolution, and that Blossom South's provider agreement would be terminated on September 15.

Blossom South commenced this action the same day that it received that letter, August 27, 2013. Plaintiff alleges that 98% of its gross revenue comes from participation in the Medicare and Medicaid programs, and that absent court intervention, it will be effectively shut down before its administrative appeal is heard.

The complaint asserts four claims for relief: (1) for a judgment declaring that defendants have violated Blossom South's procedural due process rights under the United States Constitution, on the ground that Blossom South has been denied notice and a meaningful opportunity to be heard prior to the termination of its provider agreement, Dkt. #7 ¶¶ 47-51; (2) for similar relief, on the ground that Blossom South has been denied meaningful notice of the requirements for termination of its provider agreement, specifically what is required to "graduate" from the SFF program, *id.* ¶¶ 52-60; (3) for a declaration that the Secretary has exceeded her congressionally-granted authority by adopting regulations permitting the termination of a facility's provider agreement absent a finding of immediate jeopardy, *id.* ¶¶ 61-69; and (4) for a declaratory judgment that the manner in which

---

<sup>6</sup>(...continued)
findings or the wisdom of plaintiff's termination. Whether the conditions at Blossom South were relatively good or bad, then, is ultimately not before me.

CMS adopted the SFF program violated the Administrative Procedure Act ("APA"), specifically 5 U.S.C. § 553, which deals with rulemaking procedures, *id.* ¶¶ 70-78.

Along with the complaint, plaintiff also filed a motion for a preliminary injunction, seeking to preserve the status quo at least until Blossom South's administrative appeal is heard. As stated, the Court granted that motion on August 30. The Court has since extended the terms of that injunction, pending further order of the Court. Dkt. #33.

The Secretary and CMS ("federal defendants") and DOH have separately moved to dismiss the complaint. The federal defendants contend that this Court lacks subject matter jurisdiction, and that plaintiff's claims are substantively meritless. DOH makes similar arguments, and also contends that there are no allegations here of any violations of federal law by DOH.

While those motions were pending, counsel for the federal defendants informed the Court that on November 27, 2013, the ALJ hearing plaintiff's administrative appeal issued a decision upholding all the findings contained in the August 2013 statement of deficiencies, and sustaining CMS's termination decision. Dkt. #34. According to the decision of the ALJ, some cited deficiencies (each of which warranted a finding of noncompliance) in the areas of professional standards, accident prevention, housekeeping, pest control, resident rights and drug records were not addressed or challenged by Blossom South (Dkt. #34, p. 7).

## DISCUSSION

**I. Subject Matter Jurisdiction: General Principles**

Since "subject matter jurisdiction is a 'threshold question that must be resolved ... before proceeding to the merits,'" *Young-Gibson v. Patel*, 476 Fed.Appx. 482, 483 (2d Cir. 2012) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89, (1998)), the Court addresses that issue first. Defendants contend that plaintiff's claims arise under the Medicare Act, and that

those claims must be administratively exhausted before this Court may exercise jurisdiction over them.

The Medicare Act ("Act"), 42 U.S.C. §§ 1395-1395ccc (1988), generally requires that claims "arising under" the Act may not be pursued in federal court until (1) they have been presented to the Secretary, and (2) the Secretary has issued a "final decision" on the claims. *See* 42 U.S.C. §§ 405(g), 405(h); *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) ("42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act") (footnote omitted). "A 'final decision' is rendered only after the individual has "pressed his claim" through all levels of administrative review." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1140 (9th Cir. 2010) (citing *Heckler*, 466 U.S. at 605). The exhaustion rule is sometimes referred to as the "channeling requirement," in the sense that all claims must first be channeled through the agency before they can be brought before a court.

Presentment of a claim to the agency is a jurisdictional prerequisite to bringing a claim arising under the Act in federal court. *Haro v. Sebelius*, 729 F.3d 993, 1007 (9th Cir. 2013). *See Illinois Council*, 529 U.S. at 13 ("§ 405(h) ... demands the 'channeling' of virtually all legal attacks through the agency").

Exhaustion, on the other hand—*i.e.* the pursuit of a claim through all levels of administrative review–is a waivable, non-jurisdictional requirement. *See id.* at 1005 ("exhaustion is waivable, presentment is not"); *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976) ("The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary"); *Escalera v. Commissioner of Social Sec.,* 457

Fed.Appx. 4, 5 n.1 (2d Cir. 2011) ("the failure to exhaust is a waivable (i.e., non-jurisdictional) requirement under Section 405(g)").

There are, however, two significant exceptions to these requirements. The first of these is commonly known as the *Michigan Academy* exception, since it was first articulated in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). As more recently restated in *Illinois Council*, 529 U.S. 1, this exception provides that the channeling requirement of § 405(h) does not bar federal question jurisdiction "where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 149 (2d Cir. 2007) (quoting *Illinois Council*, 529 U.S. at 19).

The second exception is for claims that are "entirely collateral" to a substantive claim under the Act. *Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Eldridge*, the Supreme Court held that the Secretary's denial of an individual's request for benefits should be deemed a "final decision" for the purpose of § 405(g), even though the plaintiff had not fully exhausted the Secretary's administrative procedures, because the plaintiff's claim that a pre-deprivation hearing is constitutionally required was "entirely collateral" to his substantive claim of entitlement and because he made a colorable claim that full relief would not be possible if he were awarded retroactive benefits through a post-deprivation hearing.[7]

Under *Eldridge*, then, a plaintiff is excused from the exhaustion requirement if (1) the plaintiff's constitutional challenge is entirely collateral to his substantive claim of entitlement; and (2) the plaintiff "has raised at least a colorable claim that ... an erroneous termination would damage him in a way not recompensable through retroactive payments," such that "full relief

---

[7]Strictly speaking, *Eldridge* did not create an "exception" to the exhaustion requirement, but rather explained the circumstances under which that requirement should be waived, or deemed satisfied. *THI*, 2013 WL 4047570, at *7; *GOS Operator, LLC v. Sebelius*, 843 F.Supp.2d 1218, 1229 (S.D.Ala. 2012). The principles set forth in *Eldridge* are commonly referred to as an "exception" to the general rule of exhaustion, however, and for the sake of conveniece the Court will use that term here.

cannot be obtained at a postdeprivation hearing." 424 U.S. at 330-31. The *Eldridge* decision rests on "the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered ... ." *Id.* at 331 n.11.

**II. Application of *Eldridge* to the Case at Bar**

The complaint here states that plaintiff's claims arise under the Medicare Act, as well as under other federal statutes and the United States Constitution. Amended Complaint (Dkt. #7) ¶ 2. There is no dispute, then, that in the absence of some exception from, or waiver of the exhaustion requirement, plaintiff's claims are not properly before this Court.

In its papers, plaintiff appears to rely principally on the *Eldridge* "entirely collateral" exception. Plaintiff contends that its claims in this action are collateral to the claims it is pursuing administratively, because it is not asking this Court to overturn the Secretary's termination decision. Plaintiff states that it is merely seeking declaratory relief, to the effect that defendants have violated plaintiff's due process rights, its rights under the Medicare Act, and the APA, as well as temporary injunctive relief pending the conclusion of its administrative proceedings.

I find that this Court does have subject matter jurisdiction over plaintiff's claims, but that plaintiff's claims fail on the merits. The complaint must, therefore, be dismissed.

With respect to jurisdiction, plaintiff's "circumstances appear ideally suited for application of the 'entirely collateral' exception to § 405(g)'s exhaustion requirement." *GOS Operator, LLC v. Sebelius*, 843 F.Supp.2d 1218, 1229 (S.D.Ala. 2012). Blossom South–which has met the jurisdictional requirement of presenting its claim to the agency–has here brought a constitutional challenge demanding a pre-termination hearing, which is entirely collateral to any

substantive claim of entitlement to participate in the Medicare program. *Id.* (citing *Eldridge*). *See also Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354, 364 ("[plaintiff] Beechknoll's second argument, that it is entitled to a pre-termination hearing under the Due Process Clause, involves Beechknoll's procedural constitutional rights and is 'entirely collateral' from its substantive challenge to the Secretary's termination decision") (citing *Eldridge*, 424 U.S. at 330-32); *THI*, 2013 WL 4047570, at *8 (D.Kan. Aug. 9, 2013) ("Assuming Plaintiff's claim in this case is confined to a due process challenge, seeking injunctive relief on the grounds that it is entitled to a pre-termination hearing, it is 'entirely collateral' from its substantive challenge to the Secretary's termination decision").

Blossom South has also made out a colorable claim that post-termination relief would be ineffective. Termination of Blossom South's provider agreement would likely be tantamount to shutting down the facility; as stated, plaintiff has submitted evidence that 98% of its residents and gross revenue come from participation in the Medicare and Medicaid programs. *See* Iannucci Decl. (Dkt. #8-1) ¶ 24; Segal Reply Decl. (Dkt. #28-5) ¶ 3.[8]

---

[8]Some courts–most notably, the Sixth and Seventh Circuits–have held that subject matter jurisdiction requires the plaintiff to make out a colorable constitutional *claim*. *See Cathedral Rock*, 223 F.3d at 366 (6th Cir. 2000); *Northlake Comm. Hosp. v. United States*, 654 F.2d 1234, 1241-43 (7th Cir. 1981).

Only once did the Supreme Court in *Eldridge* use the word "colorable," however, stating that the plaintiff in that case had "raised at least a colorable claim that because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments." 424 U.S. at 331. As recently stated by Chief Judge William H. Steele of the Southern District of Alabama, "A fair reading of this language is that what must be 'colorable' is the claimant's showing of irreparable harm," rather than the constitutional claim itself. *GOS Operator*, 843 F.Supp.2d at 1230 and 1231 n.21. *See also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 213 (1994) (characterizing *Eldridge* as holding that § 405(g) "was not intended to bar federal jurisdiction over a due process challenge that was 'entirely collateral' to the denial of benefits ... where the petitioner had made a *colorable showing that full postdeprivation relief could not be obtained*") (emphasis added).

Even if the underlying claim itself must be "colorable," however, I find that Blossom South has met that standard. While I conclude that plaintiff's claim is ultimately meritless, *see*

(continued...)

**III. Merits of Plaintiff's Due Process Claims**

Nevertheless, plaintiff's due process claims fail on the merits. Federal courts have held that a nursing home or similar facility has no constitutional right to a hearing prior to the termination of its Medicare or Medicaid provider agreement.

For example, in *Northlake Comm. Hosp. v. United States*, 654 F.2d 1234, 1242 (7th Cir. 1981), the Court of Appeals for the Seventh Circuit held that "Medicare providers ... cannot raise a colorable constitutional claim of entitlement to a pre-termination hearing." The court reached that conclusion after applying the factors set forth in *Eldridge* (which involved a claim brought by Medicare disability claimants).

The Sixth Circuit followed the Seventh Circuit's lead in *Cathedral Rock*, 223 F.3d 354, holding that the plaintiff nursing facility was "not entitled to a pre-termination hearing under the Due Process Clause for the reasons set forth in the Seventh Circuit's opinion" in *Northlake*. *Id.* at 366 (citing *Northlake*, 654 F.2d at 1241-43). Essentially, both the Sixth and Seventh Circuits held that in a case involving a Medicare provider: the private interest at stake is not particularly strong, since the provider is not the intended beneficiary of the program; the risk of erroneous

---

[8](...continued)
*infra*, I do not believe that it can fairly be described as "immaterial and made solely for the purpose of obtaining jurisdiction," or "wholly insubstantial and frivolous." *Ozaltin v. Ozaltin*, 708 F.3d 355, 371 n.23 (2d Cir. 2013) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006)). *See GOS Operator*, 843 F.Supp.2d at 1231 n.21 ("[n]otwithstanding the Court's determination ... that GOS's claims do not have a substantial likelihood of success on the merits, they appear to satisfy by a comfortable margin the minimal threshold of being 'colorable' ... for purposes of the 'entirely collateral' analysis under *Eldridge*); *see also Cassim v. Bowen*, 824 F.2d 791, 794-95 (9th Cir. 1987) (stating that physician who brought due process challenge to denial of full hearing prior to his suspension from Medicare program "raises a serious constitutional challenge. It is not insubstantial, immaterial, or frivolous," but going on to affirm denial of preliminary injunction on ground that plaintiff had failed to demonstrate probability of success on the merits).

In any event, my conclusion in this regard has no effect on my ultimate decision on whether to grant the motions to dismiss. Regardless of whether this Court has subject matter jurisdiction over plaintiff's claims, I conclude that those claims must be dismissed.

deprivation is "quite manageable," due to the procedural safeguards in place, particularly the extensive documentaton requirements; and the government has a strong interest in "expeditious provider termination procedures ... ." *Northlake*, 654 F.2d at 1242; *accord Cathedral Rock*, 223 F.3d at 365.

Other federal courts addressing this issue have reached similar conclusions. *See, e.g., Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir. 1981) ("a pre-termination hearing is not required as to the plaintiff Home"); *GOS Operator*, 843 F.Supp.2d at 1233 ("the overwhelming majority of authorities (including all or virtually all appellate decisions) to have addressed the issue have concluded that Medicare providers enjoy no constitutional right to a pre-termination hearing"); *THI*, 2013 WL 4047570, at *8 (same); *see also Case v. Weinberger*, 523 F.3d 602, 606-08 (2d Cir. 1975) (full-blown hearing was not required prior to Secretary's determination that nursing home was no longer a "skilled nursing facility") (pre-*Eldridge*).

That conclusion applies with particular force in this case, now that plaintiff has in fact been granted a hearing, and the ALJ has rendered a decision. Blossom South requested a prompt hearing and it received one. It is true that Blossom South can administratively appeal from that decision. In other words, the process may not be over. But even if plaintiff could show that it has some constitutionally protected interest at stake, the Due Process Clause generally requires only notice and an opportunity to be heard; it does not mandate either the availability or completion of any appeals before the deprivation of a protected interest. *See, e.g., Flaim v. Medical College of Ohio*, 418 F.3d 629, 642 (6th Cir. 2005) ("Courts have consistently held that there is no right to an appeal from an academic disciplinary hearing that satisfies due process"); *Winnick v. Manning*, 460 F.2d 545, 549 n.5 (2d Cir. 1972) ("Winnick had no constitutional right to review or appeal after the disciplinary hearing which satisfied the essential requirements of due process"); *cf. White v. Matthews*, 559 F.2d 852, 857 (2d Cir. 1977) (existence of a live

controversy when class-action complaint was filed was sufficient to enable plaintiff's lawsuit to proceed as a class action, notwithstanding the named plaintiff's receipt of a hearing and ALJ decision after the filing of the complaint).[9]

In short, then, plaintiff has failed to make out a viable due process claim based on its assertion that it is entitled to a pretermination hearing. This claim must therefore be dismissed.

Plaintiff's other due process claim, that it has not been given adequate notice of the requirements for Blossom South to be removed from, or to avoid termination under the SFF program, is also meritless. The record here demonstrates that Blossom South was provided with extensive notice of its alleged deficiencies, the implications of those deficiencies, and the consequences of failing to correct them. Blossom South has also been advised of the reasons for defendants' determination that those problems have not been corrected. I fail to see in what respect plaintiff was not given adequate notice of what the specific problems were at Blossom South, or that a failure to correct those problems could result in termination of its provider agreement. *See THI*, 2013 WL 4047570, at *9 (finding that nursing home "received considerable process," where it had been been subjected to numerous surveys, had submitted several corrective action plans, and had been "provided with notice at the time it was designated a SFF that termination of its provider contracts would result if it did not qualify to graduate from the program or obtain an extension of time to remedy deficiencies").

---

[9]I also note that the Secretary has statutory authority to terminate a nursing home's provider agreement during the pendency of the administrative process. *See GOS Operator*, 843 F.Supp.2d at 1237.

**IV. Secretary's Authority to Terminate Absent a Finding of Immediate Jeopardy**

Plaintiff also alleges that the Secretary has exceeded her statutory authority by adopting regulations providing that a facility's provider agreement may be terminated absent a finding of immediate jeopardy. Dkt. #7 ¶¶ 63, 64. This argument has been rejected by other courts, with good reason.

The relevant statutes support defendants' position that "the Secretary has authority to terminate [a provider's] participation when one or more conditions of participation are not met, even without the presence of immediate jeopardy." *Oakwood Community Center ICF/MR v. Sebelius*, 723 F.Supp.2d 937, 940 (E.D.Ky. 2010). In particular, "section 1910 of the Social Security Act [42 U.S.C. § 1396i] provides the Secretary with authority to terminate [a provider] when the conditions of participation are not met," and that statute "says nothing about any need for immediate jeopardy to be present before termination is allowed." *Id.* at 941.

Likewise, the court in *GOS Operator* held that the Secretary's regulations permitting termination in absence of finding of immediate jeopardy "have a reasonable foundation in the text of the Medicare statute," particularly 42 U.S.C. § 1395cc(b)(2)(A), which "provides that the Secretary 'may refuse to renew or may terminate [a provider] agreement after the Secretary ... has determined that the provider fails to comply substantially with the provisions of the agreement, with the provisions of this subchapter and regulations thereunder.'" 843 F.Supp.2d at 1235-36. *See also Athens Healthcare, Inc. v. Sebelius*, No. 3:13-1443, 2013 WL 2403578, at *6 (M.D.Pa. May 31, 2013) ("[B]y statute, CMS has the discretionary authority to terminate a Medicare provider agreement where it finds that a facility is out of substantial compliance with the federal participation requirements for nursing homes in the Medicare and/or Medicaid programs. This discretion is not limited to cases in which immediate jeopardy is present") (citing 42 U.S.C. § 1395cc(b)(2)(A); 42 C.F.R. § 488.456(b)(1)(I)); *Vencor Nursing Centers, L.P. v. Shalala,* 63

F.Supp.2d 1, 9 (D.D.C. 1999) ("There is no indication in the legislative history that Congress wished to limit HHS's ability to terminate a persistently noncompliant facility"); 42 U.S.C. § 1395i-3(h)(2)(A) ("Nothing in this subparagraph shall be construed as restricting the remedies available to the Secretary to remedy a skilled nursing facility's deficiencies").

I agree with these decisions and conclude that the Secretary acted within her authority in adopting regulations permitting termination of a provider's Medicare agreement even absent a finding of immediate jeopardy. This claim is therefore dismissed as well.

**V. Claim under the Administrative Procedure Act**

Plaintiff's final claim is that in adopting the SFF program, CMS did not provide notice of the program, or provide interested persons an opportunity to comment, and that CMS thereby violated the APA, 5 U.S.C. § 553. Section 553 generally requires that an agency publish notice of proposed rule making, and "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments ... ." 5 U.S.C. § 553(b), (c).

Under the APA, "[i]n most instances, agency 'rule[s]' must be subjected to a notice and comment period before taking effect." *New York State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*, 267 F.3d 128, 131 (2d Cir. 2001) (quoting *Zhang v. Slattery*, 55 F.3d 732, 744 (2d Cir. 1995) (other citations omitted). "The APA's notice-and-comment requirements apply only to 'substantive,' what are sometimes termed 'legislative,' rules, not to, *inter alia*, 'rules of agency organization, procedure, or practice.'" *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 168 (2d Cir. 2013) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 196 (1993)).

"Because all procedural rules affect substantive rights to some extent, the distinction between substantive and procedural rules" is not always obvious, but rather is often "one of degree ... ." *Time Warner*, 729 F.3d at 168 (quoting *Electronic Privacy Info. Ctr. v. United*

*States Dep't of Homeland Sec.*, 653 F.3d 1, 5-6 (D.C. Cir. 2011) (internal quotation marks omitted). *See also American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987) ("the spectrum between a clearly interpretive rule and a clearly substantive one is a hazy continuum"). Simply put, "[s]ubstantive rules create new law, rights, or duties, in what amounts to a legislative act," whereas a procedural rule "does not itself alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency. ... Put another way, a procedural rule does not impose new substantive burdens." *Time Warner*, 729 F.3d at 168 (internal quotes and citations omitted). Ultimately, the question is whether "the substantive effect is sufficiently grave" to warrant requiring notice and comment, in order to further the APA's purpose of permitting public participation in agency decisionmaking and ensuring that an agency has all pertinent information before it when it makes a decision. *Id.* (quoting *Electronic Privacy Info. Ctr.*, 653 F.3d at 6).

In my view, the adoption of the SFF program did not amount to "substantive" or "legislative" rulemaking. The underlying substantive rules governing the requirements for nursing homes' participation in the Medicare and Medicaid programs were enacted, with notice and public comment, in 1994. *See* 59 Fed. Reg. 56116 (Nov. 10, 1994). The CMS documents establishing the SFF program (which dates back to 1998, which has been modified since, and which was codified by Congress in 2010, *see* 42 U.S.C. § 1395i-3(f)(8)), essentially amount to a plan for enforcing the existing, properly enacted statutory and regulatory regime. *See Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1039 (9th Cir. 2013) (agency's alleged policy was not subject to notice-and-comment requirements of the APA, since it "merely provide[d] guidance to agency officials in exercising their discretionary powers while preserving their flexibility and their opportunity to make individualized determinations") (internal quotes and alterations omitted).

The SFF program, then, constitutes no more than a set of procedural rules, rather than substantive lawmaking. CMS documents relating to the program do not change the substantive requirements for nursing homes' participation in Medicare or Medicaid, but simply "direct[] more attention to nursing homes with a record of poor survey performance." Dkt. #24-3 at 21. Such nursing homes may be subject to heightened scrutiny, but they are not required to meet more stringent substantive requirements than are other nursing homes.

That is consistent with the stated purpose of the SFF program to deal with "facilities with a 'yo-yo' compliance history," *i.e.*, facilities that improve enough to pass one survey, only to backslide and fail the next. Dkt. #24-4. To that end, CMS has directed that SFFs receive two surveys per year (rather than one, as with non-SFFs), and that within eighteen to twenty-four months after being designated as an SFF facility, a nursing home will either "graduate" from the program, receive an extension of time to correct deficiencies, or be terminated. *See THI*, 2013 WL 4047570, at *3; Dkt. #24-4 at 5-6.

Closer scrutiny by CMS does not amount to new or substantively different obligations on the part of the subject nursing homes. What is demanded of the nursing home is that it comply with the Medicare and Medicaid eligibility requirements. That a closer eye may be kept on it than on facilities without a similarly poor track record does not mean that the SFF program amounts to legislative rulemaking. There is, then, no basis for plaintiff's APA claim.

## CONCLUSION

The Court is cognizant of the fact that this decision dismissing plaintiff's complaint will have significant and painful consequences. Blossom South's business will be impacted dramatically and many residents of the facility with significant physical and psychological problems will be uprooted and forced to relocate, in many, perhaps most, instances against their will.

One would think that those who regulate nursing homes, both state and federal, should take all necessary steps to work with nursing homes to help them succeed. Regulators have many remedies available for those homes that struggle to be in compliance. Termination of the Medicare provider agreement is the most drastic and, seemingly, should be the last choice of remedy rather than the first.

Here, an immediate termination was ordered, apparently with no ability to rectify matters once that decision had been made. Regulators have much discretion and, therefore, the sensitivity and the wisdom of the termination decision is not before this Court. The ALJ also made it clear that she was not ruling on "whether" termination should be the result, just that the Secretary had the authority to enter such an order.

The law relative to plaintiff's claims is not favorable to it. Defendants, therefore, have prevailed but there should be little reason for defendants to rejoice. The result of all this is most regrettable.

The motions to dismiss filed by defendants Nira V Shah, MD (Dkt. #23) and Kathleen Sibelius and Marilyn Tavenner (Dkt. #24) are granted, and the complaint is dismissed.

Plaintiff's motions for an expedited hearing (Dkt. #11) and for an extension of time to file papers on its motion for a preliminary injunction (Dkt. #19) are denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 17, 2013.