UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BLOSSOM SOUTH, LLC


                              Plaintiff,

                                                        DECISION AND ORDER

                                                        13-CV-6452L

                v.

KATHLEEN SEBELIUS,
as Secretary of the United States Department
of Health and Human Services,
MARILYN TAVENNER,
as Administrator of the Centers for Medicare and
Medicaid Services,
NIRAV SHAH, M.D.,
as Commissioner of Health of the
State of New York,

                              Defendants.
_____


        This is an action by a Rochester, New York nursing home, Blossom South, LLC ("Blossom

South"), against federal and state defendants, alleging claims that defendants have violated plaintiff's

federal constitutional due process rights in connection with the termination of its Medicare and

Medicaid provider agreement ("provider agreement").  On December 17, 2013, this Court issued a

Decision and Order, familiarity with which is assumed, granting defendants' motion to dismiss the

complaint ("dismissal order").  Dkt. #35; 2013 WL 6622906.

        Plaintiff has now moved for an order "restoring the preliminary injunction" that this Court

granted on August 30, 2013, which enjoined defendants from terminating plaintiff's provider

agreement pending further order of the Court.  Dkt. #17.  Plaintiff also seeks an order enjoining

defendants from taking steps to terminate Blossom South's provider agreement, pending the outcome of plaintiff's appeal of this Court's dismissal order to the Court of Appeals for the Second Circuit.[1]

# BACKGROUND

The relevant background of this case is set forth in this Court's dismissal order, 2013 WL 6622906, at *1-*3, and will be recited here only briefly.  Blossom South operates a skilled nursing facility in Rochester, New York.  Blossom South participates in Medicare and Medicaid ("the programs"), which are federally-funded programs that compensate participating providers for health care services provided to qualifying patients.

To receive payments under these programs, a facility must meet certain requirements, including requirements relating to the quality of health care provided to residents.  Facilities that do not meet those requirements are subject to various remedies and penalties, up to and including termination from the programs.  *See* 42 C.F.R. § 488.408; *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 6-7 (2000).

In August 2013, the federal Centers for Medicare & Medicaid Services ("CMS"), which oversees the programs, informed Blossom South that Blossom South's Medicare provider agreement would be terminated as of September 14, 2013, due to Blossom South's history of deficiencies.  This followed a period of over two years during which Blossom South had been monitored under CMS's

---

[1]After reviewing the parties' papers, the Court finds that there is no need for oral argument on plaintiff's motion.  The relevant issues have been thoroughly addressed in the current motion papers and on the prior motions, and oral argument would only delay the disposition of the pending motion.  *See* Local Rule 7(c) (whether to hear oral argument is discretionary with the court); *United States v. Basciano*, No. 05-CR-060, 2009 WL 8673013, at *2 (E.D.N.Y. Jan. 20, 2009) ("In the civil context, the law is clear that there is no right to oral argument"), *aff'd in part, rev'd on other grounds in part*, 599 F.3d 184 (2d Cir. 2010).

"special focus facility" ("SFF") program, which subjects to particular scrutiny facilities that have a track record of noncompliance with program requirements.

After receiving this notice, Blossom South requested an administrative hearing before an administrative law judge ("ALJ"). Blossom South also commenced this action against CMS and the New York State Department of Health (which has some responsibility for monitoring facilities' compliance with the programs), asserting due process and other federal claims. Blossom South also filed a motion for a preliminary injunction, seeking to preserve the status quo at least until Blossom South's administrative appeal could be heard.

This Court granted the preliminary injunction motion on August 30, 2013 ("injunction decision"), and directed that defendants take no steps to terminate plaintiff's provider agreement pending further order of the Court. 2013 WL 4679275. At that point, no administrative or other hearing had been held, and the Court's main concern in issuing the injunction was, as stated, simply to preserve the status quo pending an administrative hearing.

Defendants then moved to dismiss the complaint on various grounds. On November 27, 2013, while those motions to dismiss were pending, the ALJ hearing plaintiff's administrative appeal issued a decision sustaining CMS's termination of Blossom South's provider agreement. Dkt. # 34.

On December 17, this Court granted defendants' motions to dismiss the complaint. The Court found, for various reasons, that plaintiff's claims were meritless. Plaintiff has filed a notice of appeal of that decision to the Court of Appeals for the Second Circuit.

Plaintiff now seeks an order restoring the preliminary injunction and enjoining defendants from terminating Blossom South's provider agreement, pending the outcome of plaintiff's appeal of this Court's dismissal order to the Court of Appeals. In effect, then, plaintiff seeks what amounts

to a stay of this Court's dismissal order, pending the outcome of plaintiff's appeal.  *See* Dkt. #38-10 at 8-9.[2]

## DISCUSSION

A district court considering whether to grant a stay pending appeal under Rule 62 of the Federal Rules of Civil Procedure should consider four factors:  "the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest."  *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002); *accord S.E.C. v. Citigroup Global Markets Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  "A stay is not a matter of right, even if irreparable injury might otherwise result.  It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case."  *Nken v.. Holder*, 556 U.S. 418, 433 (2009) (citations, quotations, and alterations omitted).

Likewise, "[s]ince the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."  *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987).  Whether to issue a stay is not simply a matter of checking off boxes or adding up factors on two sides of a ledger, but a decision that is committed to the sound discretion of the court.  *U.S. Bank Na'l. Ass'n v. Nesbitt Bellevue Property LLC*, No. 12 CIV. 423, 2012 WL 2033548, at *1 (S.D.N.Y. June 5, 2012).

---

[2]Although plaintiff cites Rule 8(a)(1) of the Federal Rules of Appellate Procedure, which deals with stay motions before a court of appeals, plaintiff's motion is more properly characterized as a motion under Rule 62(c) of the Federal Rules of Civil Procedure, which provides that "[w]hile an appeal is pending from [a] ... final judgment that grants, dissolves, or denies an injunction, the [district] court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."

With respect to irreparable injury, CMS contends, in response to Blossom South's that "[n]o cataclysmic event will take place on January 15, 2014," which is the date on which Blossom South's provider agreement is currently scheduled to end. *See* Dkt. #41. CMS states that "Blossom South will continue to receive payments for all residents admitted prior to December 17, 2013" up to March 16, 2014. Dkt. #41 at 2.

CMS may be correct that Blossom South's operations will not come to a crashing end on January 15, but I do find, nonetheless, that Blossom South has demonstrated a likelihood of irreparable harm absent a stay. A decision on plaintiff's appeal is likely months away, well beyond March 16. Furthermore, even before March 16, many residents are likely to leave Blossom South; in fact, the government's January 10, 2014 letter to the Court quotes its December 26, 2013 letter to Blossom South as stating that "[t]he 60 day period [between the January 15, 2014 termination date and March 16] is to allow you sufficient time to notify residents and transfer them to certified facilities." Dkt. #41 at 1.

While harm to the appellant is unquestionably relevant, it is not the only factor that the Court must consider, however. There is also the question of plaintiff's likelihood of success on the merits, on appeal. To be sure, an appellant seeking a stay need not demonstrate that it will *probably* succeed on appeal; if that were the standard, few if any district courts would ever grant a stay. *See Millennium Pipeline Co., L.L.C. v. Certain Permanent and Temporary Easements, etc.*, 812 F.Supp.2d 273, 275 (W.D.N.Y. 2011). What is required is a "substantial possibility" of prevailing on appeal. *United States v. Gelb*, 826 F.2d 1175, 1177 (2d Cir. 1987). Precisely how "substantial" a possibility of success must be shown can vary from one case to another; the Second Circuit has stated that "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quotation marks and alteration omitted).

But regardless, even a strong showing of harm does not render the other factors superfluous; the court must still consider the other factors. *See Nken*, 556 U.S. at 438 ("When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other") (Kennedy, J., concurring); *Curry v. Baker*, 479 U.S. 1301, 1302 (1986) ("It is no doubt true that, absent [a stay], the applicant here will suffer irreparable injury.  This fact alone is not sufficient to justify a stay") (Powell, J., in chambers); *Westmont Dev. Group, LLC v. Twp. of Haddon*, No. 07-5846, 2009 WL 2230910, at *2 (D.N.J. July 24, 2009) ("The only factor favoring a stay is irreparable harm, but this alone is insufficient to support a stay pending appeal"), *aff'd*, 373 Fed.Appx. 310 (3d Cir. 2010); *In re Twenty-Six Realty Associates, L.P.*, No. 95 CV 126, 1995 WL 170124, at *15 (E.D.N.Y. Apr. 4, 1995) ("A showing of irreparable harm alone is insufficient to justify the grant of a stay").

What is most glaringly missing here is any significant chance of success on the merits, on appeal.  It is true that a "substantial possibility, although less than a likelihood, of success on appeal" may be enough, in conjunction with the other relevant factors, to warrant a stay pending appeal. *Daniels v. City of N.Y.*, 138 F.Supp.2d 562, 564 (S.D.N.Y. 2001) (quoting *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994)).  And again, few district courts would ever issue a decision, and then find that a party appealing from that decision is *likely* to succeed on appeal.  At the same time, however, the appellant must show more than simply *some* chance of success on appeal; since the appellant's arguments have already been considered and rejected by the court, the appellant must "demonstrate a substantial showing of likelihood of success, not merely the possibility of success, because [the appellant] must convince the reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error."  *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997).

For the reasons stated in my dismissal order, I find very little chance that Blossom South will succeed on appeal.  There are close cases, in which a district court has little authority to guide it, where the authority that exists is divided, or where the court has to choose between two positions

of nearly equal merit.  But here, the case law is almost uniformly against plaintiff, in holding that

a nursing home has no due process right to a pretermination hearing.  *See, e.g.*, Cathedral Rock of

North College Hill, Inc. v. Shalala, 223 F.3d 354, 366 (6th Cir. 2000); *Northlake Comm. Hosp. v.*

*United States*, 654 F.2d 1234, 1242 (7th Cir. 1981); *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th

Cir. 1981); *THI of Kansas at Highland Park, LLC v. Sebelius*, No. , 2013 WL 4047570, at *8

(D.Kan. Aug. 9, 2013) (stating that "[t]he overwhelming majority of circuit courts of appeals ... have

determined that Medicare providers enjoy no constitutional right to a pre-termination hearing"); *GOS*

*Operator, LLC v. Sebelius*, 843 F.Supp.2d 1218, 1233) (S.D.Ala. 2012) ("the overwhelming majority

of authorities (including all or virtually all appellate decisions) to have addressed the issue have

concluded that Medicare providers enjoy no constitutional right to a pre-termination hearing"); *see*

*also Case v. Weinberger*, 523 F.3d 602, 606–08 (2d Cir. 1975) (full-blown hearing was not required

prior to Secretary's determination that nursing home was no longer a "skilled nursing facility").[3]

Perhaps even more significantly–also as pointed out by this Court in my December dismissal

order–"plaintiff has in fact been granted a hearing, and the ALJ has rendered a decision."  2013 WL

6622906, at *6.  Blossom South's complaint alleged that plaintiff "ha[d] been denied notice and a

meaningful opportunity to be heard in a meaningful manner before termination of its Medicare

provider agreement."  Dkt. #1 ¶ 46.  For relief, plaintiff sought an order "directing defendants to

provide it with administrative review prior to terminating its Medicare provider agreement ... ."  *Id.*

at 12.

Plaintiff has now received such review.  The ALJ conducted a hearing, and has issued a

twenty-nine-page decision setting forth lengthy, detailed reasons for her decision to uphold CMS's

---

[3]Defendants contend that the Court should apply "the more rigorous likelihood-of-success
standard" applicable to requests for injunctive relief "that will affect government action taken in
the public interest pursuant to a statutory or regulatory scheme ... ."  *Metropolitan Taxicab Bd. of*
*Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010), *cert. denied*, ___ U.S. ___, 131
S.Ct. 1569 (2011).  While the Court has taken into account the nature of the relief requested,
insofar as it would affect the government's and the public's interests, *see infra*, I find it
unnecessary to decide whether this more rigorous standard should apply, because even under the
more lenient, "substantial showing of likelihood of success" standard, plaintiff's motion fails.

determination to impose the remedy of termination.  And again as stated in my dismissal order, there is substantial authority that even when due process requires a pretermination hearing, that does not mean that the plaintiff is entitled to full exhaustion of all its administrative or judicial appeals before a deprivation may occur.  *See* 2013 WL 6622906, at *6, and cases cited therein.  Plaintiff has submitted no authority to the contrary.

I note that in its brief in support of its motion for a stay, Blossom South "recognizes that the cases which [this] Court cited [in its dismissal order] do hold that a pre-termination hearing is not required to satisfy due process."  Dkt. #38-10 at 18.  Blossom South asserts, however, that it "believes that it has a substantial possibility of convincing the Second Circuit Court of Appeals otherwise ... ."  *Id.*

While in the absence of controlling Supreme Court authority, appellate courts can disagree, I am not inclined to accept Blossom South's contention that "it has a substantial possibility" of convincing the Second Circuit that the other courts of appeals that have addressed this issue have all reached the wrong conclusion.  Blossom South argues that those cases "do not comport with Second Circuit jurisprudence and are distinguishable" from the case at bar, *id.*, but I do not believe that such an argument has a substantial possibility of persuading the Second Circuit.  Blossom South's chances of convincing the Second Circuit that its sister circuits have uniformly been wrong on this issue are a long shot, at best.

As to the potential for harm to the defendants, it is true that, in a purely monetary sense, defendants will suffer no concrete "harm," regardless of whether a stay or injunction issues, because they will likely pay out the same amounts for patient care, regardless of where the affected residents are located.  *See Ridgeview Manor of Midlands, L.P. v. Leavitt*, No. 07-cv-861, 2007 WL 1068224, at *6 (D.S.C. Mar.30, 2007)).

But that is not to say that the defendants have no interests at stake here; this case is not simply about Medicare reimbursements, but about the welfare of residents, who are the primary beneficiaries of the programs.  As the Court of Appeals for the Second Circuit has noted, "With

regard to the substantiality of the government interest in the state and federal regulation of nursing homes, it can hardly be doubted that the interest is of the highest order." *Blue v. Koren*, 72 F.3d 1075, 1080 (2d Cir. 1995). *See also Case*, 523 F.2d at 606 ("there is indeed a significant government interest in securing the safety of Medicaid patients"); *Anderson v. Perales*, No. 91-CV-1294, 2006 WL 1555605, at *10 (N.D.N.Y. June 6, 2006) ("An awesome burden is placed on government agencies insuring that the elderly and infirm entrusted to nursing homes are given the care and protection required by state and federal health laws"). That interest plainly weighs against granting plaintiff's motion.

The fourth factor–the public interest–is highly significant here, however, and in my view likewise weighs against the issuance of a stay or the restoration of the prior injunction. Unlike many civil cases, which often arise out of private commercial disputes in which the general public has no particular interest, this action involves remedial action by an agency that has been charged with protecting the health and safety of nursing home residents. Certainly the public has a strong interest in ensuring that nursing home residents receive adequate care. In the final analysis, that interest must take precedence over the interests of nursing homes that have been found, after a hearing, to have a demonstrated history of poor performance.

Because the government has been charged with the duty to protect the public interest in this area, its interests largely merge with those of the public; *see Nken*, 556 U.S. at 435; *United States v. Transocean Deepwater Drilling, Inc.*, ___ Fed.Appx. ___, 2013 WL 3803873, at *5 (5th Cir. 2013). As another district court has stated, "CMS has been granted its discretionary authority in order to effectively administer the Medicare Program and to protect the interests of nursing home residents. The public interest is best served by allowing CMS to exercise their authority to ensure that providers meet the basic minimum standards of care in order to guarantee the welfare of the nursing home residents." *Athens Healthcare, Inc. v. Sebelius*, No. 13-1443, 2013 WL 2403578, at *8 (M.D.Pa. May 31, 2013).

Nevertheless, some additional comments concerning the public interest here are in order. The interest of the public–particularly that of nursing home residents themselves, and their families–is especially significant considering that the residents, not the nursing homes in which they reside, are the intended and primary beneficiaries of Medicare and Medicaid.  A nursing home that participates in the programs certainly benefits from the programs, in a monetary sense, but that benefit is incidental, and not central to the programs' purpose.  *See Case*, 523 F.2d at 607 (stating that a "nursing facility's 'need' for patients ... is incidental.  That a particular nursing facility cannot survive without Medicaid participation was certainly not Congress' foremost consideration in its creation of the Medicaid program"); *accord River Nile Invalid Coach and Ambulance, Inc. v. Velez*, 601 F.Supp.2d 609, 619 (D.N.J. 2009).

As to the residents of Blossom South, plaintiff notes that the surveys that precipitated the impending termination did not include any findings of "immediate jeopardy" to Blossom South residents.  As the ALJ pointed out, however, the deficiencies that were identified as having the "'potential for causing more than minimal harm' are not trivial."  The ALJ found that "these purportedly 'lower level' deficiencies unquestionably endangered the health and safety of facility residents."  Dkt. #34 at 10.  In other words, that residents' health or safety may not be threatened with *imminent* harm does not mean that residents would not be better served by allowing termination to proceed sooner rather than later.  *See Beverly Health & Rehabilitation Services, Inc. v. Thompson*, 223 F.Supp.2d 73, 111 (D.D.C. 2002) ("residents may be at considerable risk even where there is no immediate jeopardy") (internal quote omitted).

In her decision, the ALJ found "that the facility had an appalling number of deficiencies that could harm its residents, any one of which puts it out of substantial compliance ... ."  Dkt. #34 at 3.  She then went on to detail the "unrebutted evidence ... that the facility was not in substantial compliance," including, *inter alia*, evidence of an "unsanitary environment," the administration of a narcotic without a physician's order, persistent problems with pest control, and the failure to monitor the condition of a resident's teeth, contrary to his care plan, until the "dire state of his teeth"

was noticed through "happenstance." Dkt. #34 at 7, 8, 12, 17.  Those findings cannot be lightly disregarded simply because conditions at Blossom South *could* have been worse.

The Court recognizes that a shutdown of Blossom South will disrupt the lives of its residents, but the same can be said any time a nursing home's provider agreement is about to be terminated. That does not always justify enjoining the government from proceeding with a termination.  If the residents are not being properly cared for, then on balance, it is better that they be removed from the facility, and transferred to facilities where they can be better cared for.[4]

In my injunction decision, I cited the inconvenience to Blossom South's residents that would result from a shutdown as one factor weighing in favor of an injunction.  2013 WL 4679275, at *1. But that was prior to the hearing before the ALJ and the issuance of the ALJ's decision.  That decision sets forth at some length and in some detail the reasons for the ALJ's finding that Blossom South was not in substantial compliance with Medicare regulations.  The ALJ also noted that some of the deficiencies were "repeat" deficiencies, meaning that Blossom South had been cited for similar problems in the past.  *See* Dkt. #34 at 12, 13.

Plaintiff may dispute those findings, but the point is that Blossom South has now been granted administrative review.  It has received the process which it is due, and the result has been adverse to it.  The correctness of the deficiency findings is not now before me.  This Court's task, now, is to decide whether the relevant factors warrant further injunctive relief, pending the outcome of Blossom South's appeal.  I conclude that they do not.

In reaching that conclusion, the Court has also considered plaintiff's other claims.  In particular, Blossom South contends in its current motion that it has a substantial possibility of success on its claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, asserting that

---

[4]Plaintiff has also submitted evidence that some of Blossom South's residents are satisfied with their living conditions and that they do not wish to be moved. With respect to the interests of the residents, however, what matters most is not whether some residents *are* being properly cared for, but whether some residents are *not* being cared for to the extent required for their health and safety.  The intent and the goal of the Medicare regulations relating to nursing homes is to provide for the health and welfare of *all* residents, not just some.

the manner in which CMS adopted the SFF program constituted "substantive" or "legislative" rulemaking. *See* Plaintiff's Mem. of Law (Dkt. #38-10) at 24-27.

Again, the Court disagrees. Without repeating all of the reasons given in my dismissal order, the SFF program has not changed the substantive requirements for nursing homes' participation in Medicare or Medicaid, but simply focuses closer attention to nursing homes with a record of poor performance. Blossom South may disagree, but I do not believe that it has demonstrated a substantial chance of prevailing on appeal as to that issue. At the very least, when weighed in the balance with the other relevant factors, particularly the public interest, this factor does not warrant granting a stay pending appeal. *See Bristol Health Care Investors, LLC v. Emkes*, No. 13cv00137, 2013 WL 2403299, at *12 (E.D.Tenn. May 31, 2013) (stating that since "the public has an interest in having public dollars spent for their intended purpose and in seeing that the beneficiaries of the Medicare/Medicaid programs receive quality care which meets their specific needs," the "Court can think of no public interest which would be served by the grant of a preliminary injunction [against termination] in this case"); *Wayside Farm, Inc. v. Bowen*, 698 F.Supp. 1356, 1366 (N.D.Ohio 1988) (stating that "[t]he public interest in properly maintaining [nursing] facilities such as Wayside includes the health and safety of the residents," and that "the Court finds that the public interest, therefore, would not be served by the issuance of a preliminary injunction").

## CONCLUSION

As the Court stated in its December 17 dismissal decision, it is unfortunate that this case has led to this result. Ideally, nursing homes and the governmental bodies that oversee them would work together to ensure that all residents are provided the best practicable care.

That has not been the result here. The parties dispute the reasons why. But it is not the role of this Court, in the context of the claims presented in this lawsuit, to determine whether Blossom South has or has not provided good, or even adequate, care for its residents. The question before me

at this juncture is whether, in the wake of (1) an administrative hearing, (2) an administrative law judge's detailed findings of deficiencies at Blossom South, and (3) this Court's determination that plaintiff's constitutional and statutory claims are meritless, the Court should enjoin defendants from proceeding with the termination of Blossom South's Medicare and Medicaid provider agreement, pending the outcome of plaintiff's judicial appeal.  In light of plaintiff's minimal chances of success on appeal, as well as the significant interests at stake with respect to the public, the residents of Blossom South, and the governmental bodies that have been charged by law with their protection, I find that the relief requested is not warranted.

Plaintiff's motion for a temporary restraining order, to restore the preliminary injunction pending appeal, and for an expedited hearing (Dkt. #38) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 17, 2014.

- 13 -